## CIRCUIT COURT OF SPOTSYLVANIA COUNTY

Patricia L. Ferguson

v.

Virginia Employment Commission et al.

October 12, 1994

Case No. C93-207

BY JUDGE WILLIAM H. LEDBETTER, JR.

In this petition for judicial review of a Virginia Employment Commission decision, the issue is whether the claimant was discharged for misconduct connected with work under Virginia Code § 60.2-618(2).

### Facts

Pursuant to the statutory scheme for judicial review of Commission decision, "the findings of the Commission as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law." Virginia Code § 60.2-625(A). Thus, the facts of the case are those stated in the Commission's decision of June 3, 1993, and in the transcript of testimony taken before the appeals examiner on March 26, 1993. In summary, the pertinent facts are as follows.

The claimant, Ms. Ferguson, was employed by McDonald's Restaurant in Spotsylvania County from August 4, 1987, to January 22, 1993, as a part-time cleaning and maintenance person. Her duties included cleaning the lobby, cleaning tables in the dining area, and disposing of trash inside and outside the building.

In mid-January, 1993, the restaurant received new uniforms for its employees to "lift the morale" of the workers. The employees were told not to wear jackets or sweaters over these uniforms while in the restaurant.

On January 22, 1993, Ms. Ferguson was working in the lobby of the restaurant. She was wearing a jacket over her uniform. Her supervisor told

her twice to remove the jacket while she was inside the building. Ms. Ferguson ignored the instructions. The supervisor reported the matter to the restaurant manager. The manager told the supervisor to tell Ms. Ferguson to remove her jacket while in the building or go home for the day. Ms. Ferguson then went to the back room where the manager was working. In response to questions by Ms. Ferguson about the "no jacket" rule, the manager reminded Ms. Ferguson that the rule had been explained the previous week and that Ms. Ferguson was to comply with it or go home. As Ms. Ferguson left the room, the manager turned away to do something else. Walking toward an adjacent "crew room," Ms. Ferguson said "you stupid bitch" or "stupid bitch." The remark was overheard by at least one fellow employee sitting in the crew room. The manager asked Ms. Ferguson about the remark, then discharged her for insubordination.

Ms. Ferguson contends that her remark did not contain the word "you." Instead of being directed toward the manager, she says, the remark was merely "self-criticism" or "self-addressed criticism"; on another occasion, however, she said that the remark was meant for her immediate supervisor, who was not present at the time.

### Applicable Law

There are a number of cases construing "misconduct in connection with work" that triggers a disqualification for benefits under § 60.2-618(2). The leading decision is *Branch v. V.E.C.*, 219 Va. 609, 249 S.E.2d 180 (1978), in which the Virginia Supreme Court defined the term as follows:

> An employee is guilty of "misconduct connected with his work" when he *deliberately* violates a company rule reasonably designed to protect the legitimate business interests of his employer, or when his acts or omissions are of such a nature or so recurrent as to manifest a willful disregard of those interests and the duties and obligations he owes his employer.

The *Branch* definition of misconduct has two prongs. The first prong is a deliberate violation of a company rule. Here, there is no evidence that McDonald's had a rule forbidding the use of vulgar or offensive language in the workplace. The company rule banning jackets worn over uniforms inside the restaurant is not the basis of Ms. Ferguson's discharge. Much has been made of that rule — its reasonableness, Ms. Ferguson's awareness of it prior to January 22, 1993, etc. — in the evidence and in counsels' memoranda. However, that matter is only the background for the

insubordination: the vulgar and offensive language that led to Ms. Ferguson's discharge. Therefore, the first prong is not applicable here. The second prong contemplates acts or omissions of an employee of such a nature or so recurrent as to manifest a willful disregard of the employer's interests and the duties and obligations an employee owes an employer. This case involves that second prong, so that the court must determine whether the Commission was correct in finding that the language of Ms. Ferguson was of such a nature as to manifest a willful disregard of McDonald's business interests and Ms. Ferguson's obligations as an employee owed to McDonald's.

Notwithstanding the several cases that define "misconduct" under the Virginia statute, there is only one appellate court decision specifically involving the use of vulgar or offensive language as "misconduct" that may bar unemployment compensation. In *Kennedy's Piggly Wiggly Stores, Inc. v. Cooper*, 14 Va. App. 701, 419 S.E.2d 278 (1992), the employee had been disabled by a back injury. He was called into a private meeting attended by several management officials, including the chief executive officer of the company. The meeting lasted more than two hours. During the meeting, the employee was repeatedly asked to resign and was questioned sharply about union organizing activity at the store. The employee responded to a directive from the chief executive officer that he was expected to do what he was told by saying, "Well, I don't know who you are or where you come from, but you're full of shit." He was immediately fired.

In *Piggly Wiggly*, the Court of Appeals noted that courts that have decided the issue have recognized that an employee's use of vulgar or offensive language, especially if directed toward a superior, may constitute willful misconduct even if the occurrence is an isolated incident. See Annot., Use of Vulgar or Profane Language as Bar to Claim for Unemployment Compensation, 92 A.L.R. 3d 106 (1979). However, several factors must be considered, including the severity of the language used; the quantity of the language used — i.e., whether it was a brief incident or a lengthy barrage; whether the language was spoken in the presence of customers or fellow employees; whether the employee had been previously warned of such conduct; and whether the language was provoked by the employer.

Thus, according to *Piggly Wiggly* and the weight of authority from other states, a finding of willful misconduct in "vulgar language" cases necessarily depends on the particular circumstances of the case.

## Decision

Applying the legal principles explained above to the facts of this case, the court is of the opinion that the Commission correctly disqualified Ms. Ferguson for unemployment compensation.

First, the Commission's finding that Ms. Ferguson's remark was directed toward the store manager is supported by the record. In fact, it is unrealistic to assume that Ms. Ferguson's comment, "stupid bitch," was a "self-addressed criticism." Her manager had just explained the "no jacket" rule to her, had reminded her that it had been explained a week earlier, and had directed her to take off the jacket while inside the restaurant or go home for the rest of the day. There is not a hint of remorsefulness, apology, or willingness to accede to the rule, such that a fact-finder could reasonably conclude that Ms. Ferguson was criticizing *herself* by uttering the vulgarity to *herself*. Just as implausible is Ms. Ferguson's contradictory contention that the utterance was directed toward her immediate supervisor, who had told her earlier to remove the jacket. The supervisor was nowhere around at the time. Although Ms. Ferguson was walking away from the manager at the time she made the remark, it is clear that the remark was directed to the manager. Even if the court accepts Ms. Ferguson's version that the word "you" was not a part of the utterance, there can be no doubt that the words "stupid bitch" uttered to a superior in the workplace, in the presence of the superior, after the superior has just finished giving the employee a directive consistent with company policy and explaining the reason for the rule, constitute a vulgar, offensive, and insubordinate remark.

Second, the court finds a reasonable basis for the Commission's conclusion that the remark was overheard by a fellow employee. In *Piggly Wiggly*, the Court of Appeals emphasized this factor, or the absence of it, in cases involving vulgar and offensive language. Even assuming that such language may not be "willful misconduct" if uttered in private as an isolated occurrence, it is admittedly quite different when the employee is in the presence of customers or fellow employees. When such a remark is hurled across the shoulder at a manager in the presence of other employees, the utterance is transformed from a private matter to gross disrespect which, if uncorrected, could have the effect of polluting employer-employee relations throughout the workplace and breeding contempt and derision. In essence, this is the key distinguishing factor between this case and *Piggly Wiggly*.

Finally, the Commission's analysis of *Piggly Wiggly*'s other distinguishing factors is correct. Here, it was Ms. Ferguson who instigated the encounter with the restaurant manager. The manager's responses to Ms. Ferguson's demand for an explanation of the "no jacket" rule as it applied to her were reasonable and to the point, calculated to fully and clearly inform Ms. Ferguson of the rule and to insist that she comply with it or go home for the day. Ms. Ferguson was not asked to resign, she was not fired or threatened with discharge over the "no jacket" rule, and the manager did not inject irrelevant and provocative subjects into the conversation. There is no evidence that the manager used rude, loud, or otherwise inappropriate language to Ms. Ferguson. These circumstances are noticeably different from management's conduct in *Piggly Wiggly*.

For these reasons, the decision of the Commission will be confirmed. Ms. Ferguson will be denied benefits because of her disqualifying misconduct, and she will be liable to repay the Commission any benefits that she may have received.